case the defendants had received an order, to which it was responded: "The same shall have prompt attention." It was there held that this response could in no sense be deemed an acceptance of the order, and the conclusion is there sustained with convincing reasoning.

If these conclusions be correct, it is unnecessary to consider the claimed error on the part of the trial court in refusing to allow evidence to show that the agent, Schlegel, had no authority to make a binding contract, or the claim of the plaintiff that the form of the card which the agent presented was a representation by the company that he had such authority. Nor is it necessary to consider whether the damages proved were properly allowed by the trial court over the objection of the defendant that they had not been pleaded. Those questions are immaterial, if, as we view it, the defendant has never obligated itself to furnish the cider press to the plaintiff under any conditions. The judgment and order must therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.

---

### WEGNER MACH. CO. v. TAYLOR.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

1. ACTION (§ 65*)—NATURE AND ELEMENTS.

In an action at law, the rights of the parties are to be determined as of the time when the action is commenced.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 735, 736; Dec. Dig. § 65.*]

2. SALES (§ 182*)—ACCEPTANCE.

Where a refrigerating plant was to be put in defendant's building and to remain plaintiff's property until paid for, plaintiff to have an opportunity to correct defects for 90 days after operation thereof was commenced, when, if it was all right, defendant was to accept and pay for it, such acceptance to be final, and, if it was not all right, plaintiff was to remove it and repay defendant whatever he had paid on the price, and the machinery did not operate satisfactorily, and fruitless efforts were made during the 90-day period to remedy defects, defendant claiming that the plant was not satisfactory and refusing to pay the balance of the price, the fact that the plant was operated and used by defendant for 8 days after the 90-day period, immediately before suit was brought for the balance of the price, did not operate as matter of law as an acceptance of the plant by defendant.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495; Dec. Dig. § 182.*]

Appeal from Trial Term, Erie County.

Action by the Wegner Machine Company against Charles Taylor. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

John J. Sullivan and Daniel J. Kenefick, for appellant.
Shire & Jellinek and Vernon Cole, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WILLIAMS, J.  The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide event.

The action was brought to recover the balance unpaid upon a contract to construct on defendant's premises a refrigerating plant and extra machinery connected therewith.  The price of the plant was $8,732, to be paid one-third by three-months note when the machinery was delivered, another one-third in cash when the plant was completed, and the remaining one-third by a three-months note to be given at the time of such completion, which defendant might renew.  The first note was given and paid, but the cash was not paid, nor the last note given.  The balance unpaid was therefore about $5,822, and there was extra machinery furnished $53.10, making the total claim $5,875.10, besides interest.  The verdict was directed for $6,218.65.

It was agreed plaintiff should construct and deliver the plant in accordance with the specification annexed to the contract, ready to do work or on before March 1, 1909, and if it did not accomplish the results guaranteed in the specifications, by reason of oversight or defect in construction, a reasonable time should be allowed plaintiff in which to accomplish said results, and when said specified *results* should have been *accomplished,* the defendant should *accept the apparatus as complete and such acceptance should be final;* but, if plaintiff should *fail* to accomplish the *results* specified *within 90 days after the time for the commencement of its operation,* then no payments should be considered due and payable thereon, and the plaintiff should refund any amounts that may have been paid or advanced and should remove the apparatus from the premises where erected.  And it was further agreed the apparatus should be and remain plaintiff's property until fully paid for, and that in case of disagreement between the parties there should be an arbitration, the decision on which should be final.  The specifications contained a guaranty by plaintiff that the apparatus should have a capacity when in full operation to make 12½ tons of raw water ice per day of 24 hours in midsummer, when properly operated and run continuously, and that it should be capable of refrigerating equal to the melting of 30 tons of ice every 24 hours of continuous operation, if kept in good order and properly handled, and the temperature of the condensing water was not above 70 degrees Fahrenheit.  The specifications provided that the defendant would properly insulate and furnish wood curbing for freezing tank, and foundations and tank floor, that the defendant would furnish foundations of plant and foundation for machine, pumps, or any part of the plant requiring one, constructed in the best manner, of first-class material, placed on a solid bottom, and any damage sustained by the plaintiff in setting up the work caused by imperfectly constructed foundations should be charged to defendant, and he should provide platform for brine tank and ammonia condenser.

The defendant claimed that the plaintiff failed to accomplish the results under the contract and specifications and to put the plant in condition to accomplish such results, and demanded that the $2,910 paid on the contract be returned, and he alleged damages in the sum of $10,000.  On demand, a bill of particulars of such damages was fur-

nished. At the close of the evidence, the court held that there was
*an acceptance of the plant,* and the defendant must pay the balance of
the purchase price and for extras, less any damages suffered by rea-
son of breach of guaranty; that the measure of damages was the dif-
ference between the value of the plant as it was guaranteed and as it
was; and that no evidence had been given on that theory. Therefore
the verdict was directed as already indicated, without any allowance
for damages.

I think it must be said that there was evidence making it a question
for the jury whether or not the plant fulfilled the terms of the guaran-
ties. It was a question for the jury, also, whether such failure was
due to the fault of the plaintiff or of the defendant. But the plaintiff
claims these questions were of no consequence, because the defendant,
with full knowledge of all defects, accepted and used the plant and
did not offer to return the same. The action was one at law; therefore
the rights of the parties were to be determined as of the time the ac-
tion was commenced. The machinery was installed June 21, 1909. It
did not operate satisfactorily. The defendant had 90 days under the
contract to remedy defects, which would expire September 21, 1909.
Eight days after that the action was begun. During that 90-day period
a test was made for 21 days. This test was not satisfactory. The hard-
ening room could not be used and the bunker room leaked. The
21-day test closed in July. Further efforts beyond that time were made
to remedy the defects in the plant and building by both parties. The
plant had to be run during the 90-day period to see if the defects were
cured. It was run, it seems, for the 8 days thereafter before the ac-
tion was begun. I do not find in the evidence that the plant was ever
made so as to comply with the guaranties, or that there was any talk
about an acceptance of the plant as it was, or about its being removed
from the premises by the plaintiff. The court could not hold as matter
of law that there was an express acceptance by the defendant of the
plant. It must have found a constructive acceptance, and that alone
from the use of the plant for the 8 days just prior to the commence-
ment of the action.

This was error. It was at most a question for the jury, and should
have been left to them, especially as the defendant by this finding was
deprived of his defense that the guaranties were not complied with,
and therefore he not only could not be compelled to pay the balance of
the contract price, but was entitled to have the plaintiff remove the
plant from his premises and pay back the money already advanced.
There was no evidence that the defendant ever conceded the plant
was constructed in compliance with the contract and the guaranties.
He was always claiming it was not, and refused to pay the balance of
the contract price. The complaint does not seem to allege acceptance
in express words, but merely that there was a sale and delivery. The
ordinary rules, in cases of the sale of personal property, as to return
or acceptance of the property, are not applicable here. This plant was
to be put in defendant's building, was to remain plaintiff's property
till paid for, and plaintiff was to have an opportunity to correct defects
for 90 days after the operation thereof was commenced. If then it

was all right, defendant was to accept and pay for it, and his acceptance was to be final. If it was not right, the plaintiff was to take it away and repay defendant whatever he had paid on the purchase price, etc. The plant was there in operation during the 90-day period. The defendant could not require it to be removed. Its business had to be carried on in the building after the 90 days expired. What was the defendant to do? There seemed to be a waiting for a few days, to conclude what should be done—what could be done, if anything. The plant was not satisfactory. The jury might have so found.

The parties, so far as the evidence discloses, did not talk or correspond about it for the few days intervening, and then this action was begun, and reliance is placed, not upon a compliance with the contract by the furnishing of a satisfactory plant, one in accordance with the contract and guaranties, but upon the technical claim that defendant, by using the part of the plant he did for the few days, accepted the whole plant, and such acceptance was final. The question might have been submitted to the jury, and, if a finding had been made favorable to the plaintiff, it *very likely* would have stood; but I cannot assent to the proposition that the limited use of the plant for a few days after the 90-day period had expired was *as matter of law* an acceptance of the plant. The use under the circumstances of this case for the 8 days should not be held to operate as acceptance, so as to cut off all defenses based upon failure to furnish the plant agreed upon, that would insure the results guaranteed. All concur.